UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| v. : | **CRIMINAL NO. 3:14-305** |
| | **(JUDGE MANNION)** |
| **PAUL RODRIGUEZ,** : | |
| Defendant : | |

## MEMORANDUM

Before the court is the *pro se* motion to vacate conviction and correct sentence pursuant to 28 U.S.C. §2255 filed by the defendant based upon ineffective assistance of counsel. (Doc. 596). For the reasons set forth below, the motion will be **DENIED** without an evidentiary hearing.

### I.  BACKGROUND

By way of relevant background, the defendant does not dispute the portion of the government's presentation of facts which provides that,

> In June 2013, the DEA commenced an investigation into a large scale cocaine and heroin trafficking organization operating in and around Wilkes-Barre, Pennsylvania. A confidential informant named [defendant] as an individual who helped supply the local trafficking organization with cocaine imported from Puerto Rico.
> In the following months, the DEA ascertained that the organization received multiple parcels on an almost-weekly basis containing up to one-half kilogram of cocaine from its Puerto Rican suppliers.

> Beginning in May and June 2014, the United States District Court authorized the use of Title III wiretaps to intercept text message communications on cellular phones utilized by [defendant] and others. These intercepted communications provided significant evidence of [defendant's] involvement in cocaine trafficking, specifically, communications revealed that [defendant] arranged for cocaine to be shipped in from Puerto Rico and provided to co-conspirator, Dennis Machuaca, for local distribution.
>
> The investigation further revealed that, from time to time, Puerto Rico-based coconspirator, Joemar Falcon would travel to Pennsylvania to meet with [defendant] to receive money proceeds of the local sales. Indeed, in November 2014, DEA agents arrested [defendant] and Falcon while [defendant] was transporting Falcon to the airport prior to Falcon's return trip to Puerto Rico. Agents seized $83,260 from Falcon's person and luggage and a loaded .380 caliber pistol from [defendant].

(Doc. 601, pp. 2-4) (record citations omitted).

On November 25, 2014, a federal grand jury returned a multi-count indictment against the defendant and other individuals. In Count I, the defendant was charged with conspiracy to distribute and to possess with intent to distribute 5 or more kilograms of cocaine, in violation of 21 U.S.C. §846, and in Count II, the defendant was charged with possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. §924(c).

On October 3, 2016, the defendant signed a plea agreement that amended Count I of the indictment, charging the lesser included offense of conspiring to distribute and to possess with intent to distribute more than 500 grams of cocaine. (Doc. 415). This amendment reduced the defendant's

mandatory minimum term of imprisonment from 10 years down to 5 years. (Id.). Moreover, the government agreed to dismiss Count II of the indictment, which carried a mandatory, consecutive term of imprisonment. (Id.). The plea agreement set forth the maximum possible penalties for the amended count, which included a potential maximum sentence of 40 years imprisonment. It further reflected a mandatory minimum five (5) year term of imprisonment.

For purposes of the relevant sentencing guidelines, the plea agreement reflected that the parties agreed that between 15 and 50 kilograms of cocaine would be attributable to the defendant, which would result in a base offense level of 32. This base offense level would be increased two levels in light of the defendant's possession of a firearm.

With respect to sentencing recommendations, the plea agreement indicated that the government could make any sentencing recommendation it deemed appropriate and that the government specifically reserved the right to recommend a sentence up to 135 months of imprisonment. The defendant was advised that the court was not bound by any recommendations of either party and was free to impose up to the maximum sentence imposed by law.

By signing the plea agreement, the defendant acknowledged that he had "read [the] agreement and carefully reviewed every part of it with [his] attorney" and that he understood it and voluntarily agreed to it. (Id.).

On October 11, 2016, the defendant came before the court for a change of plea hearing and entered a plea of guilty to the amended Count I of the indictment. (Doc. 539). In doing so, the defendant indicated, under oath, that he was mentally competent to enter a guilty plea and that he had sufficient time to discuss his case with his counsel. The defendant indicated that he was satisfied with his counsel's representation.

The following exchange occurred between the court and the defendant:

> Q: Mr. Rodriguez, has anyone persuaded, induced, threatened or coerced you in any way to enter a plea of guilty here today?
>
> A: No.
>
> Q: Can I be satisfied then that the decision to enter a plea of guilty is yours and yours alone?
>
> A: Yes, definitely.

(Id., p. 8). Subsequent to this exchange, the defendant indicated that he had read and reviewed the plea agreement. He indicated that the terms of the agreement had been explained to him by his counsel and that he understood its contents. The defendant indicated that the terms of the agreement were acceptable to him. (Id., pp. 9-10).

The terms of the plea agreement were then summarized by the government. Included in the government's summarization were the

mandatory minimum and potential maximum sentences that could be imposed. The defendant indicated that he agreed to those terms. (Id., pp. 10-15). The government then placed on the record the factual basis for the guilty plea. Again, the defendant indicated that he agreed that the factual basis was accurate. (Id., pp. 18-24).

On February 10, 2017, the defendant was sentenced to 108 months of imprisonment. As a result of the parties' stipulations as to the defendant's offense level, the guideline range was 108-135 months.

The defendant appealed his conviction and sentence to the United States Court of Appeals for the Third Circuit, which affirmed the judgment of sentence on March 26, 2018 (Doc. 572).

On March 4, 2019, the defendant filed the instant §2255 motion, in which he raises two grounds for relief, both based upon allegations of ineffective assistance of counsel. In Ground One, the defendant alleges that his counsel's failure to communicate with him and conduct an adequate pretrial investigation, file substantive pretrial motions, inform him of the circumstances and consequences of pleading guilty as opposed to going to trial and attempt to negotiate a favorable plea agreement for him, all deprived him of effective assistance of counsel. In Ground Two of the motion, the defendant alleges that counsel was ineffective because of a conflict of

interest. The government filed a response to the motion on March 21, 2019. (Doc. 601). On June 6, 2019, the defendant filed a reply brief. (Doc. 613).

**II.     STANDARD**

When a district court judge imposes a sentence on a defendant who believes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255. *See United States v. Eakman*, 378 F.3d 294, 297-98 (3d Cir. 2004).

The rule states, "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *See United States v. Bendolph*, 409 F.3d 155, 165 n.15 (3d Cir. 2005) (stating district courts have the power to dismiss petitions *sua sponte* during the Rule 4 stage of habeas proceedings).

A Section 2255 motion "is addressed to the sound discretion of the district court." *United States v. Williams*, 615 F.2d 585, 591 (3d Cir. 1980). A

motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his federal sentence for any error that occurred at or prior to sentencing. *See In re Dorsainvil*, 119 F.3d 245 (3d Cir. 1997). In order to prevail on a Section 2255 motion to vacate, set aside, or correct a sentence, the defendant must show "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United States v. Bates*, 2008 WL 80048, at *2 (M.D. Pa. Jan. 7, 2008) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). The defendant bears the burden of proof under Section 2255 and must demonstrate his right to relief by a preponderance of the evidence. *United States v. Ayers*, 938 F.Supp.2d 108, 112 (D.D.C. 2013).

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel. The United States Supreme Court has found that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

Thus, under *Strickland*, to prove that his counsel was deficient at trial or sentencing, the defendant must convince the court of two factors, deficient performance by counsel and prejudice from that deficient performance. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. Satisfying the first factor, deficient performance, requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Substandard lawyering is not enough to obtain relief. In assessing an attorney's performance, courts apply a highly deferential level of scrutiny. *See Marshall v. Cathel*, 428 F.3d 452, 462 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 689). This deference is afforded because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

To satisfy the second factor of the Strickland test, "the defendant must show that the deficient performance prejudiced the defense" by demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In other words, "the party claiming ineffective assistance 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different.'" *Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008) (quoting *Strickland*, 466 U.S. at 694). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings . . . not every error that conceivably could have influenced the outcome undermines the reliability of the proceeding." *Id.* (quoting *Strickland*, 466 U.S. at 693). Additionally, counsel cannot be held to be ineffective for failing to pursue a meritless issue. *Werts v. Vaughan*, 228 F.3d 178, 203 (3d Cir. 2000).

Relief under §2255 for ineffectiveness of counsel is only available to defendants who make adequate showings with respect to both factors of the *Strickland* test. *See Strickland*, 466 U.S. at 686. "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." *Ayers*, 938 F.Supp.2d at 113.

### III. DISCUSSION

Defendant first claims that his counsel failed to communicate with him and conduct an adequate pre-trial investigation. While he provides that he met with counsel on over a dozen occasions, the defendant argues that his counsel never developed a solid defense that could be presented and had no advice on how to defend the case against him. The defendant does not,

however, point to any facts to indicate that there was, in fact, a valid defense that could be presented. Given the overwhelming evidence against the defendant and his failure to point to any facts in the record which indicate that there was a viable defense which his counsel could have pursued, the court finds this claim without merit. There is nothing in the record before the court to demonstrate that representation of defendant's counsel fell below the standards of basic competence, or that the defendant was prejudiced as a result.

Defendant also argues that his counsel was ineffective for failing to file substantive pre-trial motions. Here, the defendant rattles off a litany of standard pretrial motions that can be filed in criminal cases. He does not, however, discuss how any of those motions would have been applicable to his case. While he apparently argues that the failure to file pre-trial motions led to him being deprived of discovery to assess and evaluate the government's case in chief, there is no indication as to what that discovery may have been or how it would have been helpful to the defendant's case. In fact, the record demonstrates that the defense was provided with the government's evidence prior to the entry of the defendant's plea, including the results of search warrants, the Title III wire intercepts, photographs and other evidence, all of which was also discussed in detail at the defendant's

change of plea hearing. The court finds that the defendant has failed to establish that his counsel's performance fell below the standards of basic competence, or that he was prejudiced as a result on this claim as well.

Next, the defendant claims that his counsel failed to inform him of the consequences of entering a guilty plea and failed to negotiate a favorable plea deal. This claim is clearly belied by the record. Initially, both the plea agreement signed by the defendant prior to his change of plea hearing and the transcript of the hearing itself establish that the defendant was aware of the consequences of entering a guilty plea in this case.

Moreover, the record establishes that the defendant's counsel, in fact, negotiated a very favorable plea deal for the defendant. Counsel was able to negotiate a deal with the government which included amending the charge to which defendant was to plea guilty to a lesser included offense that carried a mandatory minimum of five as opposed to ten years as originally charged. In addition, counsel negotiated to have the government dismiss the second count of the indictment which carried an additional consecutive mandatory sentence of five years of imprisonment. The defendant ultimately received a 108-month sentence, a sentence much less than that he faced on the original indictment. This sentence was achieved due to the efforts of defendant's counsel in negotiating a plea agreement on the defendant's behalf with the

government. The court finds that counsel was not ineffective in either informing the defendant of the consequences of entering into the plea or in negotiating the terms of that plea.

Finally, in his second ground for relief, the defendant claims that his counsel had a conflict of interest. Apparently, the defendant is arguing that the conflict was between counsel wanting more fees and failing to adequately defend the asset forfeiture issues of his case. Defendant provides no support whatsoever for this claim. It would appear that, to the extent counsel was seeking more fees, there was incentive for counsel to, in fact, dedicate time to contesting the forfeiture of assets. The court finds that the defendant's claim of ineffective assistance of counsel on this basis is unsupported by the record. There is no basis to conclude that counsel's representation as to the asset forfeiture aspect of the defendant's case fell below the standard of basic competence or that the defendant was prejudiced as a result.

In light of all of the foregoing, the defendant has not established that he is entitled to §2255 relief and the court will **DENY** his motion to vacate. (Doc. 596). The court will also decline to issue a certificate of appealability,

as defendant has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). An appropriate order will issue.[1]

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 8, 2021**
14-305-12

---

[1] The defendant requests an evidentiary hearing as alternative relief to the granting of his motion. The court is denying the motion without the need for an evidentiary hearing as the defendant's claims are wholly unsupported by the record. *see Drayton v. United States*, 2019 WL 1896601, at *8 (M.D.Pa. Apr. 29, 2019) (denying a motion to vacate without the need for an evidentiary hearing because the defendant's claims of ineffectiveness of counsel were nothing more than a "series of subjective perceptions of the facts as well as unsubstantiated assertions regarding the alleged ineffectiveness of his counsel" that were wholly unsupported by the record).